COURT OF APPEALS
DECISION
DATED AND FILED

May 25, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1455**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV31**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN EX REL. THOMAS SOCHA,

    PETITIONER-APPELLANT,

V.

CHARLES SIMONO,

    RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Forest County: JAMES R. HABECK, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Thomas Socha appeals from an order that dismissed his mandamus action without awarding him costs and fees pursuant to

WIS. STAT. § 19.37(2)(a) (2019-20).[1] The primary issue on appeal is whether Socha substantially prevailed on his action to compel the Forest County District Attorney to turn over documents in response to Socha's open records requests. We conclude that Socha prevailed in substantial part on the action. Accordingly, we reverse and remand with directions that the circuit court award Socha costs and fees consistent with this opinion.

## BACKGROUND

¶2 Judge Leon Stenz formerly served as the Forest County District Attorney. In 2002, Stenz prosecuted criminal cases against Socha, Elizabeth Mrazik and Victor Holm, each relating to the death of Lance Leonard. Charles Simono succeeded Stenz as the Forest County District Attorney in 2008.

¶3 On March 11, 2019, Socha sent Simono an open records request seeking a copy of a "proffer agreement" Socha asserted had been made in Mrazik's case. Simono did not respond to that request. Socha sent Simono a follow-up request for the same proffer agreement on April 4, 2019. In response, on April 9, 2019, Simono's legal assistant sent Socha a letter stating that she was only able to find two relevant pages from the files in the district attorney's office left by Simono's predecessor. One of the pages was a letter from Stenz to Mrazik's attorney, Wright Laufenberg, dated October 22, 2002, discussing the terms of a potential plea agreement. The other page consisted of handwritten notes dated September 4, 2002, appearing to memorialize the referenced agreement.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4 On April 12, 2019, Socha sent Simono a letter asserting that the pages provided were not responsive to Socha's first and second open records requests because they were not in the "format" that Socha would expect a proffer agreement to take. Socha believed that Mrazik had signed a written agreement to obtain a reduction of the first-degree homicide charge against her to second-degree reckless homicide, with reduced bail, use and derivative use testimonial immunity, and a recommendation for probation, all in exchange for her cooperation with the investigation into Leonard's death. Socha stated that he was in possession of a copy of a proposed "stipulation and order" to reduce Mrazik's bail that Laufenberg had faxed to Stenz on May 2, 2002, a day after Mrazik had provided information to the district attorney. There appeared to be two pages missing from the fax, which Socha believed to be the proffer agreement. Socha attached to his letter a third open records request for the proffer agreement.

¶5 On May 23, 2019, after receiving no response to his third open records request, Socha sent Simono a fourth open records request seeking additional documents, including all letters and emails between Stenz and Socha's postconviction attorney, Barbara Cadwell, all letters and emails between Stenz and Socha himself, and a "NSF cash receipt" that Holm's attorney had provided to Stenz. Socha advised Simono that if Simono did not provide the requested documents as soon as practicable, or provide a written explanation for his failure to do so, Socha would pursue legal action. Although a cover letter to Socha's fourth open records request mentioned that he was still awaiting a response to the third open records request for the proffer agreement, the fourth open records request did not itself request the proffer agreement.

¶6 Having received no response to his fourth open records request, Socha commenced this mandamus action on June 25, 2019, seeking to compel

Simono "to produce, inter alia, [Mrazik's] proffer agreement." Socha incorporated a demand for the additional materials he sought in his fourth open records request into his mandamus action by reference to the date of that request, which he attached to the petition.

¶7    On September 24, 2019, the circuit court issued a writ of mandamus compelling Simono to provide Socha with copies of "all of the non-confidential, unprivileged, and available information" requested by Socha within five days of service of the writ. Simono accepted service of the writ on November 12, 2019. On November 18, 2019, Simono provided Socha with: (1) a letter dated May 22, 2002, from Laufenberg to Stenz, requesting a transcript of Mrazik's statement to law enforcement; (2) Stenz's handwritten notes regarding a potential plea deal dated September 4, 2002, that had been previously provided; (3) a letter dated September 27, 2002, from Laufenberg to Stenz, expressing interest in working out a resolution to Mrazik's case; (4) a letter dated October 16, 2002, from Laufenberg to Stenz, proposing a resolution to Mrazik's case; (5) the previously provided letter dated October 22, 2002, from Stenz to Laufenberg, expressing Stenz's understanding of a proposed plea deal for Mrazik; (6) a letter dated October 24, 2002, from Laufenberg to Stenz, with an attached blank "plea agreement" form, noting that Laufenberg had not yet received a "formal" offer from Stenz; (7) a letter dated February 26, 2004, from Stenz to Cadwell, referencing enclosures that were not included in the district attorney's file; and (8) a letter dated March 25, 2004, from Stenz to Socha, regarding Socha's request for postconviction discovery.

¶8    Simono stated in a cover letter that the items were being provided "in response" to Socha's open records requests and the writ of mandamus.

Addressing the lack of additional records, including the proffer agreement, Simono explained:

> Unfortunately, the record keeping process that existed prior to my entering office, for lack of a better word, was abysmal. The files, including all yours and all co-defendants in the matter to which you seek documents, have no order or structure but rather are pieces of paper piled into plastic bins. Each defendant having their own respective bin(s).
>
> In an effort to best respond to your requests, I personally have gone through every codefendant file in addition to your own. The written correspondence between individuals with former district attorney Stenz appears to be minimal at best given what does exist in the files.
>
> In response to the want for a copy of the Elizabeth Mrazik "PROFFER AGREEMENT" I can advise you that one does not exist in the files within my office. I have included within this response all communications that reference the want for consideration. I was not able to locate any proffer letter/agreement. Additionally, I spoke with Judge Leon Stenz regarding the matter, as he was the prosecutor on the matter, and he is of the recollection that there wasn't any agreement for Ms. Mrazik.

In addition, Simono asserted for the first time in the cover letter that he was not the custodian of any emails between his office and any of the codefendants or their attorneys, directing Simono to the Department of Justice IT department for those requests. Finally, Simono further asserted for the first time that he was not the custodian of the NSF cash receipt, and he suggested that it might be in the possession of the clerk of court if it had been introduced as an evidentiary exhibit.

¶9 On December 2, 2019, Socha filed a document entitled "Motion to Strike the Return." Socha asked the circuit court for a ruling that Simono was the rightful custodian of the proffer agreement and the NSF cash receipt and for an order compelling Simono to locate those documents if they had been removed

from the district attorney's office, so that Simono could provide them to Socha. As evidence that the proffer agreement existed, Socha provided a copy of the bond reduction stipulation that he had referenced in his third open records request dated April 12, 2019, which contained mechanically generated notations along the top of the stipulation indicating that it was page three of a fax.

¶10 The circuit court held a hearing on Socha's motion on April 23, 2020, at which Simono failed to appear. With respect to the proffer agreement, the court observed that, in its experience, "sometimes these things are done orally when there are attorneys." As a result, "not everything has a record that can be reproduced later on." With respect to the receipt, the court noted there were several places where it could be located. The court ultimately determined that Simono had turned over all of the requested materials in his possession, and he had no further duty to respond.

¶11 Socha then asked the circuit court to award him costs and fees pursuant to WIS. STAT. § 19.37(2). Socha argued that he was entitled to recover the $164.50 filing fee for the mandamus action and $100 for service costs because Simono had not provided the correspondence items sought in Socha's May 23, 2019 open records request until November 18, 2019, in response to the writ of mandamus issued by the court. The court orally denied the motion, stating:

> [S]o at this point, from what I can see, I believe that there has been disclosure and providing of the documents that are available there. That being the case, I cannot find a gap that would lead me to believe that Mr. Socha would be entitled to a cost award under these circumstances.

¶12 Socha moved for reconsideration, and he also asked for the entry of a final written judgment. Simono agreed with the request for a final written judgment and did not object to Socha's request for costs and fees, but he argued

6

against any discretionary award of damages (which Socha had mentioned in his writ petition, but not in his motion for costs and fees). The circuit court then issued a written order noting that Simono "had spent considerable time and effort providing records" to Socha, "justifying dismissal." Socha now appeals the court's denial of his motion for costs and fees.

## DISCUSSION

¶13    WISCONSIN STAT. § 19.37 authorizes the recovery of costs and fees in an open records mandamus action when an authority has "wrongfully withheld" requested records. *Eau Claire Press Co. v. Gordon*, 176 Wis. 2d 154, 159, 499 N.W.2d 918 (Ct. App. 1993). The statute provides in relevant part:

> [T]he court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action … relating to access to a record or part of a record [requested under the open records law]. If the requester is … [an] incarcerated person, the requester is not entitled to any minimum amount of damages, but the court may award damages.

Sec. 19.37(2)(a). A requester "prevails" on a mandamus action to produce open records when the action could reasonably be regarded as necessary to obtain the information and a "causal nexus" exists between the action and the authority's production of the records sought. *Eau Claire Press Co.*, 176 Wis. 2d at 159. The test for determining causation in Wisconsin "is whether the actor's action was a substantial factor in contributing to the result." *Id.* at 160. Where, as here, the existence of causation is an inference to be drawn from established facts, we will review the circuit court's determination under the "reasonableness standard." *Id.* That is, we will uphold the court's determination of causation unless we find that

7

the inference drawn by the court could not reasonably be drawn from the established facts. *Id.*

¶14    Socha asserts that it was reasonably necessary for him to commence the mandamus action because Simono did not "as soon as practical and without delay" either produce the records sought in Socha's April 12 and May 23 open records requests, or notify Socha of the "determination to deny the request[s] in whole or in part and the reasons therefor," as required by WIS. STAT. § 19.35(4). Specifically, Simono did not produce the requested letters and provide an explanation for why he was denying the requests for emails, the receipt, and the renewed, more specific request for the proffer agreement until nearly six months after Socha's last open records request, but within days after the circuit court's issuance of a writ of mandamus. Socha contends that the only reasonable inference to be drawn from the timing of Simono's response to Socha's April 12 and May 23 open records requests is that the mandamus action was a "substantial factor" in the release of the requested information.

¶15    In response, Simono first argues that he was not obligated to respond to Socha's April 12 renewed request for the proffer agreement because he had already produced the records he believed were relevant to that request. Technically, we note that it was Simono's legal assistant who responded to one of Socha's prior open records requests for the proffer agreement and apparently made a determination as to what appeared to be relevant. Simono did not assert that he had "personally" searched the files until his November 18 letter in response to the writ of mandamus. In any event, the assertion that Simono's office had already produced two records relevant to the proffer agreement sought in the April 12 request does not address Simono's failure to timely respond to Socha's separate May 23 request for letters, emails and the NSF cash receipt.

¶16     Simono next asserts that Socha did not prevail on the mandamus action with respect to the additional materials sought in the May 23 request because the mandamus action "focused" on the proffer agreement and did not "clearly put at issue" the additional materials Socha was seeking to have produced. This assertion is neither factually nor legally persuasive.

¶17     Socha's writ petition was only three pages long.  We agree with Simono that a substantial portion of the petition focused on the proffer agreement sought in Socha's April 12, 2019 request.  Nonetheless, the petition also devoted two full paragraphs to discussing Socha's May 23 request, which did not include the proffer agreement.  Socha then concluded his petition with a request for the circuit court to issue a writ of mandamus ordering Simono to either produce "the record" identified in Socha's April 12 and May 23 open record requests or to provide a response explaining his failure to do so.  In this context, where the April 12 and May 23 requests were seeking different records, the reference to "the record" in the singular was an obvious typographical error.  The reference does not, as Simono contends, signify that Socha's mandamus action was seeking production only of the proffer agreement.

¶18     Moreover, even if the writ petition could more "clearly" have articulated that Socha was also seeking the letters, emails and receipt identified in his May 23 request, Simono provides no convincing explanation as to how such an alleged defect would affect Socha's entitlement to costs and fees under WIS. STAT. § 19.37(2)(a).  It is undisputed that Simono provided Socha with six new documents on November 18 that fell within the scope of Socha's May 23 request. The issue under *Eau Claire Press Co.* is whether the mandamus action was a "substantial factor" in the production of those documents.  Simono's own cover letter acknowledged that the documents were being produced "in response" to the

writ of mandamus. Simono did not provide any other reason, either to the circuit court or to this court, for his six-month delay in producing the letters sought in the May 23 open records request—which he was able to locate within five days of being served with the writ. He certainly did not claim that his failure to timely respond to the May 23 open records request was due to a lack of specificity in the writ petition that Socha filed approximately one month later.

¶19 Simono makes an additional assertion that "the circuit court acted within its fact-finding province when it concluded that a connection was lacking" between the mandamus action and the production of the additional documents. The problem with this argument is that the court made no such determination. Instead, the court stated that Socha was not entitled to costs and fees because, by the time of the hearing on the motion to strike the return, Simono had provided all of the requested documents that were available and had spent considerable time and effort doing do. The court did not find, however, that any efforts to locate the correspondence sought in the May 23 request had been undertaken before Socha commenced the mandamus action. Rather, from the court's comments, it appears that it was denying costs and fees because Simono complied with the writ by supplying the requested correspondence and making additional attempts to track down the missing or nonexistent written proffer agreement and missing receipt. Under the substantial factor test, however, compliance with a writ would weigh in favor of a causation determination, not against it.

¶20 We conclude that the only reasonable inference that could be drawn from the established facts is that Socha's mandamus action was a substantial factor in Simono's production of the documents sought in Socha's May 23 open records request. It follows that Socha prevailed, in substantial part, on the mandamus

10

action, even though no additional documents were produced in relation to the April 12 open records request.

¶21     Finally, Simono contends that even if Socha is entitled to some costs and fees, he is not entitled to attorney fees or damages.  We note that Socha did not request attorney fees, either before the circuit court or this court.  Socha did make a general demand for damages, but he did not specify any damages that he actually suffered.  Simono does not dispute that Socha paid $164.50 for the filing fee and $100 for personal service of the writ of mandamus, or that those costs and fees are reasonable.  We conclude that Socha is entitled to recover $264.50 in costs and fees under WIS. STAT. § 19.37(2)(a).  We therefore reverse and remand with directions that the circuit court enter an amended judgment awarding Socha those costs.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.